On behalf of the athlete, Mr. Gary J. Ravitz. Once again, we apologize for the delay this morning. Mr. Ravitz, you may proceed. Thank you. It's my privilege to talk to you briefly today about the case of Mr. Tingelstad. As the Court's aware, we have raised three claims in the brief. The third one had to do with Mr. Tingelstad's theft conviction. I think it's a meritorious issue. I'm asking the Court to vacate that conviction. I'm happy to answer any questions Your Honors may have about that issue. But in the limited time today, I'd like to focus on the other issues in the brief. Just very quickly, can you tell us how Miller doesn't apply to that? I think Miller does apply in the sense that it lays out the test this Court has to follow in deciding whether there was a lesser-included offense in this case. So Miller clearly applies. But I think under Miller, you have to first determine whether this case involved a single act or multiple acts. In this case, we've taken the position it was a single act. And under those circumstances, under Miller, multiple convictions for the burglary and theft would be improper. But assuming for the sake of argument that the Court were to agree with the State that there are multiple acts here, then you would still have to determine whether the theft in this case was a lesser-included offense. I respectfully suggest it was, given the nature of the indictment, which charged Mr. Tingelstad with the residential burglary, specifically based on the intent to commit a theft in this case. The evidence in the case as to the entry, of course, was completely circumstantial. That doesn't mean it's not sufficient to convict. But assuming that the judge's verdict on the decision on the burglary was correct, still the theft was part and parcel of the burglary. The whole purpose of the burglary was to commit the theft. So even under that prong of Miller, I think that we have essentially a lesser-included offense, and therefore the lesser offense of theft should be vacated. Turning then to the first issue in the brief, which is the sentencing issue, I think everyone is in agreement that sentencing is a critical stage in a criminal case, and that Mr. Tingelstad had a right to appear in person. I'm asking this Court to vacate the sentence, to remand the matter for a new sentencing hearing, because Mr. Tingelstad did not knowingly waive his right to appear in sentencing, and yet the meat of the sentencing hearing occurred off the record in the Court's chambers in a discussion between the judge and the attorneys for Mr. Tingelstad and the prosecutor in this case. Are you complaining about the fairness of the hearing or the sentence? Is there some defect in the sentence imposed? I don't know. Or the fairness of the hearing? It's unfair because we don't know. And I don't mean to be glib about that, but look, we have no idea what evidence was presented in aggravation in this case. We have no idea what evidence was presented for mitigation in this case. We have no idea what reasons the judge relied upon to oppose the sentencing there. All I know is that the sentence is more than the minimum. Now, if a six-year sentence had been imposed, then I suppose this issue is moved. We're not here today. But if it wasn't a minimum sentence, it was more than a minimum, and maybe it was more towards the minimum than the potential maximum in the case. Nonetheless, this record contains no evidence that lets this Court really evaluate whether the sentence was appropriate in the case. So I'm not attacking the sentence per se, but I think the procedure was not a fair one. And, in fact, it doesn't even comport with what I think the Illinois statutes contemplate, putting aside what the Constitution requires in this case. I mean, you look at the sentencing statute for a state in Illinois, it contemplates a public hearing with a full array of information being made available to the sentencing judge in this case. For example, subsection 4 talks about aggravation and mitigation, and aggravation being presented as being considered by a sentencing judge. And there are specific provisions of the Illinois Code that define what those types of evidence are in great detail. In this case, you can't look at this record, Your Honors, and say what evidence was mitigating what evidence is aggravating because... What about the pre-sentence report that the Court relied on? Okay, the pre-sentence report would contain evidence that the trial judge could have relied on in this case, but is not the sole source of aggravating and mitigating evidence. Certainly, Mr. Tinglestats, through his attorney, would have been entitled to put other types of evidence outside of the pre-sentence report and mitigation. Likewise, the state may have had additional circumstances to argue an aggravation in this case. We simply don't know. But they didn't. Nobody did. Now, this sentencing hearing was in several stages, wasn't it? No. It wasn't? No. It wasn't. So the Court didn't hear the case, hear about a sentencing, then everybody said, oh, let's stop because he might be sentenced. He might be able to be sentenced as a Class X offender. And then they came back, and the Court went back in chambers again, and your client knew all of this and agreed to all of this. The Court admonished him, and he agreed to all of this. Wasn't it kind of in different stages? I don't think the record respectfully shows that any of that occurred. Here's what happened. On April 1, 2010, the offense conduct occurred. Four days later, April 5, 2010, Mr. Tinglestat appeared with counsel. At that time, there was a 402 conference. Mr. Tinglestat was admonished pursuant to Rule 402. That conference failed. Months later, in February 2011, Mr. Tinglestat entered a jury waiver, and the matter was proceeded to trial in this case. Finally, on May 18, 2011, there was a sentencing hearing. Now, Mr. Tinglestat's lawyer fumbled throughout this case, in my view, but that's an issue maybe for a different day. Well, before the sentencing hearing, there was a trial. Yes. Okay. So you skipped that step. Well, yes. So there was a bench trial, and then it proceeded to sentencing hearing. Yes, in May of 2011. And at that sentencing hearing, Mr. Tinglestat's lawyer said, Well, Judge, I'm asking, along with the state, to come back in the chambers and discuss matters here, and, you know, I'm not sure exactly what to call. I'm looking for a term here. It was kind of like a 402, but it's not a 402, rather. It was a sentencing hearing. And before that sentencing hearing, they made a judgment. But didn't people testify in aggravation at the sentencing hearing? No. And didn't they testify in mitigation? I don't think so. So at March 11th, 2011, sentencing hearing, Joseph Dvorak didn't testify that he owned the place and that several coils were removed. Didn't the defendant's mother testify? The jail chaplain testified? Yes. Okay. So wasn't that a hearing in mitigation and in aggravation? Didn't that occur? Well, yes, certainly. Okay. So you kind of just slid over that. Well, the point is you told us that there were no witnesses in aggravation or mitigation at the sentencing hearing. You were incorrect, correct? In May. Okay. So, no, that was in March. Yes. So you didn't mean to purposely misguide us, did you? No, I was referring specifically to May 18th, 2011. All right, continue. Now, as far as it goes, Mr. Tinklestadt, in May, was not advised by the judge regarding the procedure that was followed on that date. Namely? That going back in the chambers. Correct. And so even if you want to analogize to a 402, it didn't have any of the trappings of safeguards that you would have in a typical 402. Which the judge actually followed way a year earlier in April of 2010 when he admonished Mr. Tinklestadt pursuant to Rule 402. So essentially you had a proceeding off the record. Again, we don't know what was said. We don't know what factors of fending were argued. We don't know what reasoning questions the judge may have had about sentencing. But following that, apparently there was an agreement reached regarding the sentence in this case. A sentence of seven years. And that agreement was reached outside of Mr. Tinklestadt's presence. That essentially is the nub of the first claim you make in this case. You know, he had a right to be present. He didn't waive that right to be present. And as we sit here today, you know, with Mr. Tinklestadt still serving out that seven-year term, we don't know precisely what factors were presented to the judge or which the judge found reliable in imposing that seven-year sentence. So in May of 2011, didn't the court advise Mr. Tinklestadt, or the defense advised in front of Mr. Tinklestadt that both he and the state wanted to go back and talk in somewhat of a 402 conference and talk about this Class X versus not. And the court said, I understand. And the state said, yeah, that's accurate. And then the court said maybe you should have some conversations and blah, blah, blah. And they went back, and then when they came back out, the court summarized for the defendant exactly what they did. Didn't that happen? Well, I would agree with you that the Tinklestadt's lawyer represented to the judge that he wished to go back to chambers and to discuss the matter. And your client was right there. Yes. And he told the judge why it was that they wanted to go back into chambers to discuss the matter. And I don't think it was that clear on the record the reasons why they wanted to go back and discuss things off the record. Did your client ever say, well, wait a minute, Judge, I don't understand this, I don't agree with this? No, and I don't think he was required to do so. I think he should have been admonished and given the opportunity to respond to that, just like in the case of the 402 conference. And, of course, in the 402 conference, he was admonished in pursuit of that rule. He was asked whether he understood that and agreed to it.  You don't have that kind of clear record in this case. Well, the court then said, okay, now any objection to the court receiving the PSR plus the addendum that was corrected? And your client said, no, no, Your Honor. Now, at this point, didn't he have the opportunity to say, no, Your Honor, I don't have an objection, but I did have an objection to you going back there and talking with the attorneys, or why wasn't I included? Or maybe he represents to his attorney, which there's nothing in the record showing that he indicated to his attorney. He didn't agree to this 402. Well, that's a problem because there's nothing in the record. That's right. So we're sort of going to have to speculate whether he agreed or not. Isn't it your burden? Well, but I think up front, it's clear that he didn't agree to it. How is that clear? He wasn't admonished. He wasn't asked whether he agreed to it. Whether he was agreeing to waive his right to be there in person as opposed to be a representative. He wasn't admonished about that in the May proceeding. He had previously agreed to a 402 conference in previous proceedings, correct? He agreed to a 402 conference in April of 2010, 13 months earlier. At that time, he agreed to it in part after the judge admonished him, pursued the rule 402, and explained to him what the consequences of the 402 proceeding could be. That didn't occur in May of 2011. Moreover, this wasn't a 402 proceeding because it was on the heels of a conviction following a bench trial. So the analogy isn't really apt. It was a sentencing hearing. And in that regard, I can imagine a situation, maybe a sensitive case with a minor victim, where you might want to go off the record to discuss some of these things. But this is a fairly garden-variety theft and burglary with nothing that appears so sensitive that it needed to be discussed outside of a public forum, which is what I think the sentencing statutes in our state contemplate will occur. Now, I'm not asking for a windfall here. I'm not saying that the judge was, that the sentence in public was not appropriate, but we should have a proceeding where we can at least look at a record and rely on a judge's findings to determine so that this court or another court can evaluate what happened, say whether the outcome was reliable and something that we can have some confidence in. If the sentence was appropriate, what difference does it make? Pardon me? If the sentence was appropriate, what difference does it make? I'm saying I don't know whether it was, Judge. I'm not coming here to tell you the seven-year sentence was wrong and you have to get six years. I'm not making that argument. The argument I'm making is he's gotten more than a minimum sentence without any record as to why that occurred. We can speculate why that occurred, but that's all speculation. Well, one of the things we can say is that he got that seven-year sentence because he said, yeah, I'll take a seven-year sentence. He agreed to it. I mean, they came out and the state said, we haven't agreed. Well, basically they said we're agreeing to the same recommendation in front of the defendant, and then the defense attorney said, yeah, that seems appropriate. Somebody said his longest sentence was six and a half years. He had like ten felony convictions or something, and they said he's eligible for mandatory minimum six, so half a year more than his most biggest sentence before seemed reasonable. I think someone mentioned that. And then the defense counsel said, and I believe my client agrees with that also. Now, I don't know if there's anything in the record about the court asking him whether he agreed to that sentence. My recollection is it was defense counsel who made the statement, this is a fair assessment or something along those lines. But I think defense counsel also said, I believe my client agrees with that, this sentence. I think he did. I think he says we agree with the sentence in this case. So, I mean, this isn't a referendum on whether this was an appropriate thing to do, going back in chambers in the middle of a sentencing hearing. I mean, I don't know that, you know, certainly we can discuss whether that's a good thing or a bad thing, but the issue is whether or not the sentencing hearing was fair. And if you're not challenging the sentence itself, that's not even an issue. So really the only issue is the fairness of the sentencing hearing. And my question is, again, if he agreed to the seven years, what difference does it make? Because he wasn't aware of what circumstances were being relied upon in selling seven-year sentences. But doesn't he know, you know, there was an entire trial. All the facts and circumstances came out. He's aware of his criminal history. As a matter of fact, my recollection is that this was continued because we couldn't find all the certified copies to make this a class X or not. Correct? Something is. Yeah. And here, just be the same thing if in the middle of a sentencing hearing, the State gets up and whispers in the defense's ear, will your client take seven? He says, yeah, I'll take seven. End of sentencing hearing. He's not entitled to a hearing if there's an agreement on disposition. Well, yeah, I think that is probably accurate. What's missing here, though, is any evidence in this record that Mr. Tinglestad was doing more than agreeing with his lawyer. There's no showing that he understood why he was being offered, if he will, that's what it was, if it was an offer of seven years, why he was being offered seven years here. I mean, it's a significant penalty. In this case, that's a year of his life. What the trial court did, didn't they come out and try to recap what was talked about in that in-camera hearing? It's not a substitute for defendants to write into the Constitution and be present at a critical stage. It just isn't. What if the two attorneys had stepped out in the hall without the judge and said, I'll offer you seven or my client will take seven. It doesn't matter who made the overture, but there's an agreement for seven years and the judge accepts it. What difference does it make how we came to that number? I guess I differ with the court that there was an agreement in this case. I think there was a sentencing hearing that resulted in a seven-year sentence. I don't know what was discussed. But you stepped up and said he didn't have a sentencing hearing. Well, he had a sentencing hearing that took place in chambers outside of his presence. But there's no evidence presented there. We don't know. There wasn't a court report with evidence being taken. It was a pre-sentence report discussed. There was testimony. The court can always consider the totality of the bench trial or whether bench or jury, the testimony presented. Where's the error here? The error is that Tingle State should have been present. He should have been able to make arguments. He should have been able to make mitigating arguments. There was lawyers. He should have been present to hear what the two lawyers were having to say. He had a right to allocute, for example. He couldn't exercise intelligently since he didn't know what had happened. He was given the opportunity for a right to allocation at the sentencing hearing. He was given that opportunity. Yes, he apologized for inconveniencing the party. He apologized. So he had every opportunity for his allocation. But an unformed exercise in that right to allocate when you don't know what's taking place in chambers. I think the court recap that was taking place in chambers is that they were discussing this Class X or Class II sentencing. That's what was recapped for the case. And I respectfully submit that that's not an adequate substitute for a public proceeding where what is stated by the attorneys and the reasons of the judge are spread of record. I mean, it puts me in a difficult situation to argue why, when we don't have a record, to say why there was an erroneous sentence. I mean, that's kind of the point. That's kind of why it's a procedure. Wait a minute. Is your argument that this is an improper sentence or is it your position that this was an improper procedure? Yes, improper procedure. Right. You conceded that the sentence was not improper based on the clergy. I don't know. I mean, I'm saying it's certainly within the statutory range. In theory, it could be a legal sentence. It's not above the maximum. But, again, my argument is with the procedure. I'm not here to say the seven years is wrong. I have evidence that it should have only been six years. I can't say that to you. That's one of the problems here. And that's why I'm suggesting that the easiest thing to do is to vacate the sentence and remand it for appropriate proceedings, and let's get it on the record what reasoning supports a seven-year sentence in this case. Yes? Yes? Counsel, you'll have time for rebuttal. Thank you. Thanks very much. Mr. Jacobs, you're next. Good morning. Can I get police support and counsel? I'm Barry Jacobs on behalf of the people of the state of Illinois. In this case, the state is, of course, asking that this court affirm both the defendant's convictions for burglary and theft and the sentences that were imposed, the seven-year agreed-upon sentence. Why does it not violate one act, one crime? Because these were multiple acts, and for theft to be found to be a lesser-included offense of burglary, under the Miller analysis, which the state believes controls this case, this court would have to compare the abstract elements of the two offenses. As I submitted my brief, those elements are different, and therefore, as the Miller case found on this very same issue, I believe it was a retail theft, however, in Miller. Retail theft is not a lesser-included offense when we're talking about charged crimes. Had this been a case where a third alternative would be provided to a jury in the course of a jury trial and a jury instruction, then perhaps a different analysis would apply, according to Miller. But under the Miller case, since these were two charged offenses with different elements, they are actually separate. Why is the defendant not at a disadvantage? Counsel clearly cannot argue that the sentence is inappropriate because he doesn't know what was said in the chambers. I'm sorry, go ahead. He's arguing the procedure was faulty here, and it was unconstitutional. The defendant was deprived of his right to be present. And one of the outcome, an outcome of that, is that he can't argue whether the sentence was appropriate or not because he doesn't know what was said in the chambers. That's his position. The state's position is this record is completely clear and reliable. The sentencing hearing commenced, well, commenced, I believe, in March of 2011. There was a bench trial in February. February 4th is in my mind. February 4th, the sentencing hearing commenced, I want to say March 23rd. There was evidence taken at that time, both in aggravation and mitigation, and there was a question raised about the defendant's prior history, whether or not he would qualify for class act sentencing because of two prior residential burglaries. And the case was continued three more times to update the social history, and eventually on May 18th is when the actual meeting conference occurred between counsels with the full assent of this defendant who stood next to his counsel while this was proposed by his counsel, while it was explained by the court that what was going to happen, what was going to go on during this conference, and he stood by, and when counsels returned with the court, the court proceeded, and I believe counsel stated, I've discussed this with my client, with Mr. Jinglestad, and he agrees that this is a class X eligible sentence. Did the court advise the defendant after they came out that they were in there discussing the difference between class X and class 2? I'm not certain after, but certainly prior to, excuse me, there was an indication by the court that because of the confusion of the dates and perhaps the certified copies of convictions in the pre-sentence report or some confusion about the dates of those residential burglaries, the court did, prior to going into that conference, advise the defendant of what would be discussed and what the purpose of it was. Did the defendant ever object or ever on the record indicate that's not what he wanted? He did not. This is not exactly the same situation of an invited error, but this was a negotiated sentence. From all indications in the record, this was agreed upon by the defendant. The procedure followed. Yes, it was a critical proceeding. It's the State's position that he did acquiesce and waive his presence to the extent that they may have stepped aside or gone into chambers, and that he wasn't deprived of any right for there to have been a due process violation, and there would have to be a showing that he was deprived of some substantial right. Well, he was deprived of the right to be present at which this discussion took place. Correct, but there was no constitutional right. He was present in the sentencing courtroom that, as Your Honor actually made the analogy, if his counsel would have stepped aside with the State and had a whispered conversation, he was still present. But if the judge is present, that changes everything. As a participant. Well, we have to assume if the three of them went into the judge's chambers, the judge participated. The State's not denying that the sentencing was a critical proceeding. However, I do believe there is no showing that he was deprived of anything by being absent from this conference. The record is clear that prior to, as I indicated, prior to the conference, the judge admonished him fully what was the purpose, and after his counsel. But is that the same as saying you have the right to be present, do you wish to give up that right? Do you wish to allow your attorney to represent you? The judge did not explicitly say that, although he did indicate to him, and he addressed him directly, Mr. Stinglestad, this is what we're going to do. He addressed him directly, and the defendant was completely silent, said nothing. Is it his obligation to say, excuse me, can I go back there too? Or is it the court's obligation to admonish him? I don't believe it's his obligation. I do feel the record is sufficient that he was, while not directly admonished, that he could come in. He was admonished that this would occur. As a result of him not being back there, did it render the sentencing that occurred prior to, and then prior to, did it render that sentencing hearing invalid or unfair, if you will? The state's position that it did not. As I indicated, the sentencing hearing commenced. There was evidence taken both in aggravation and mitigation from his witnesses. The jail chaplain, I believe his mother testified. He was given a right of allocution. Counsel's complaint that there was no full hearing is simply not borne out by the record. The fact that there was a component clarified in a conference from the state's position does not invalidate that this was a full sentencing hearing as required. We have procedures for 402 conferences, and admonishments that we give, and this is a purpose for 402 conferences, and sometimes there's a very valid purpose to have those conferences off the record, outside the presence of everybody. There's no procedures for a mid-sentencing, in-chambers conference without anybody being there, without the defendant being there, without a court reporter. The reason there are no procedures for that is because there's no use for it. What's the use for that type of a conference? I suppose, and this is pure supposition, there's nothing in the record to support it, that the counsels may have wanted to have the judge's participation in determining whether or not he would agree with their recommended sentence of seven years. The defendant, as I argued in the brief, was eligible for classic sentencing six to 30. He had, I believe, five prior felony convictions, including those two Class II residential burglaries. He was subject to a lengthy sentence in this case. It was in his interest to have negotiation. Then the trial court summary after the fact was not accurate if that happened, because the trial court summary after the fact basically said we were talking about sentencing parameters and Class X versus Class II and all that. The trial judge afterward never said we talked about a potential sentence that I'd agree to go along with. No. As I said, it was pure supposition. That would be a potential reason for a conference, mid-sentencing. I suppose because of the confusion in the PSI regarding these dates and counsel initially didn't, maybe in March, did not agree that this was a Class X eligible offense. So perhaps there was some attempt to clarify that fully. At this point, I can't answer what the of-record reason was or wasn't. The state would actually liken this to somewhat of an invited-error doctrine. This defendant fully participated, based on the record, in this sentencing hearing and agreed to the sentence that was imposed, which was seven years. One year over the minimum, he wasn't probation-eligible, and a half year over the longest sentence he'd ever done. So it's the state's position that for him to now complain would be unfair to send this back when there's been no showing that there's been any kind of unfairness to him in the sentencing hearing. If there are no other questions, should I address other arguments? It's up to you guys. I will decline and ask that the Court, again, affirm the convictions for both burglary and theft and the sentences imposed. Thank you, Mr. Jacobs. Mr. Rabbits, you may proceed with rebuttal. Just let me make a couple of points. First, on the third issue, the retail theft case decided by the Supreme Court is a little bit distinguishable on the basis of retail theft, as the Court knows. The retail theft provisions, although included under Article 16 of the Criminal Code, are in a special subsection. This case is regarding a variety of theft. In this case, the indictment specifically alleged that the burglars committed the intent to commit theft in violation of 16-1, which is a general theft provision. So I think factually, Mr. Tinglestad's case is a little bit different factually than Miller. Moving on, back to the... Would it change the abstract elements approach, though, that not all the elements of the theft are included in the burglary? I guess in this case, Your Honor, I think they certainly are implicit. Are they not? The attempt to commit the theft, by implication, contains all the definitions of the crime of theft in 16-1. Now, I understand all this requires an entry with the attempt to commit that crime. It's not necessarily necessary, for example, to show that Tinglestad was in possession of property with the intent to permanently deprive the owner, or whatever the language of the statute is. But I think in this case, where there's a specific reference to the general theft offense in 16-1, that even if you look at the facts of the case, what you have here is that Tinglestad was found outside the premises in possession of property belonging to someone else. That's the long and short of the case. Now, the judge was able to infer, based on the circumstantial evidence, that he must have entered the house in order to remove it, therefore he was guilty of the burglary. But to me, it's flip sides of the same coin in this case, where the charge specifically incorporates the theft. So that without putting... You know, whether you look at it as a lesser included, as you look at it under one crime, one act of crime, one crime doctrine, in this case you essentially have Tinglestad's possession of stolen property providing a basis for his conviction on both of the offenses. And I think on that basis, the more serious offense, the burglary offense, is the offense that stands, and that conviction should be vacated. On the issue of the sentencing issue, let me just say a couple things in rebuttal. One, we don't know why there was this in-chambers meeting. It wasn't to see whether the judge would agree to a recommended sentence. It wasn't necessary. The judge had found Tinglestad guilty after a trial. You didn't have to hear from the... You could hear the parties' recommendations, certainly, but there was no negotiation at that point. It was strictly up to the judge, as a sentencing judge in this case, to meet out a sentence within the parameters established by law. Well, no, we don't know that one way or the other. There may very well have been negotiations going on. It's certainly not uncommon, even after a bench trial, for an offer to be extended. So we don't know one way or the other. I suppose, but you can't offer an explanation for the meeting. The judge did not have to... At that point, the judge is free to impose a sentence anywhere from 6 to 30 years once he found that Tinglestad qualified for that offense. He could entertain a recommendation. At that point, there's nothing more than recommendations of the parties, perhaps. That's what you have. Isn't it possible that it would have behooved your client to have the attorneys go back and talk to the judge because maybe a judge might say, geez, with 10 felony convictions, this guy's criminal history, there is no way I'm taking 7 years. So perhaps it was beneficial to your client that they went back and discussed this. Well, I would agree with you. Had he received 6 years in this case, I'd say yes. That would be beneficial and that would be a good reason to go back to the chambers and have to discuss whether there are additional aggravating factors. So for one extra year, you're saying, oh, they shouldn't have gone back and discussed it with the judge when your client was eligible for what? 30 years? He was. I mean, he was eligible for 7 to 6 to 3 years. There's no question about that. I simply suggest if we had a case where the 6-year sentence, the minimum we've imposed on him, there's nothing to talk about. Obviously, he's gotten as much of a baff as he possibly can. What's missing here is that he didn't get the minimum sentence. And we may say, well, it's just a year. Well, and do not argue that with 10 prior felony convictions, he probably wasn't deserving of a 6-year sentence and probably not deserving of a 7-year sentence. But the attorneys went back and discussed it with the judge and maybe cajoled the judge to go along with what they were thinking. I don't know. I can't answer that because there's nothing on the record to show a lawyer. So how can you show that that meeting caused his sentencing hearing to be unfair? Because he had a right to be present and we don't know. That's why it's unfair, because we don't know. Because we're speculating what happened. We just don't know. The first of your argument is he had a right to be present. He wasn't present, ergo error. He's entitled to a new hearing. He caused the sentences in excess of the minimum sentence. So that there's a year of his life. So it's not error to have an ex parte communication without your client there as long as he gets the minimum? No, I'm saying that may have ameliorated any prejudice to my client. So if he would have gotten a 6-year sentence, we wouldn't be here today. I probably wouldn't. So your prejudice argument is the additional year. Well, I think that's certainly potentially a source of prejudice here. He didn't get... Well, you have to show some kind of prejudice, so... Well, he got more than a minimum in this case. And I can't speculate whether, you know, he was deserving of 7. He wasn't deserving of 7. That's something for a different day, I think. But what I can say is that his right to be present, perhaps, is not as significant in the case where there's no harm. No harm, no foul, if you will. He could have done better than he did. But in this case, certainly theoretically, he could have done better than he did. Okay, so lawyers and judges can have ex parte or, you know, off-the-record ex parte conversations without the defendant being present just as long as the defendant doesn't get more than the minimum? Well, in this case, if the defendant had acquiesced to it, which he did not, if the defendant had been informed... Okay, now you're changing the rules on me. If the defendant would have gotten 6 years, then that 402 or that ex parte conversation wouldn't have been so bad. Then I would say it was harmless error. But it's not harmless error in this case because he got more than the minimum. So there's error regardless, but I probably don't come here before you if I think the error is harmless and if my client didn't suffer as a result of it. I thought we were going to have to amend the Supreme Court rule. If you don't have any other questions, I thank you for your time today. Thank you. Thanks, counsel, for the argument, and we'll take the case under advisement. We're adjourned.